**SOUTHWESTERN BELL TELEPHONE COMPANY, et al., Petitioners,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents,**

**Bell Atlantic Telephone Companies, et al., Intervenors.**

Nos. 95–1193, 95–1194, 95–1200, 95–1201, 95–1207, 95–1208, 96–1081, 96–1111, 96–1112 and 96–1114.

United States Court of Appeals, District of Columbia Circuit.

Argued May 14, 1997.

Decided June 27, 1997.

Robert B. McKenna, Jr., Denver, CO, argued the cause for petitioner, with whom Robert M. Lynch, San Antonio, TX, Durward D. Dupre, St. Louis, MO, M. Robert Sutherland, Atlanta, GA, Jack B. Harrison and Thomas E. Taylor, Cincinnati, OH, David J. Gudino, Irving, TX, Rodney L. Joyce, Washington, DC, Michael S. Pabian, Hoffman Estates, IL, and Margaret E. Garber, Washington, DC, were on the briefs.

Stewart A. Block, Counsel, Federal Communications Commission, Washington, DC, argued the cause for respondent. William E. Kennard, General Counsel, Daniel M. Armstrong, Associate General Counsel, John E. Ingle, Deputy Associate General Counsel, Carl D. Lawson, Counsel, Joel I. Klein, Acting Assistant Attorney General, U.S. Department of Justice, Robert B. Nicholson, and Robert J. Wiggers, Attorneys, were on the brief.

William J. Byrnes, Washington, DC, argued the cause for intervenors, with whom Frank W. Krogh, Washington, DC, Victor J. Toth, Reston, VA, and John H. Chapman, New York City, were on the joint brief.

Before WILLIAMS, GINSBURG, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

In these consolidated petitions several local exchange carriers (LECs) challenge two orders of the Federal Communications Commission holding that they violated the Commission's rules by assessing certain resellers of 800 service excessive carrier common line (CCL) charges. Specifically, the Commission concluded that the petitioning LECs were liable to the resellers for a partial refund of the CCL charges because the LECs had assessed the resellers two terminating CCL charges (rather than one terminating and one originating charge) for each call made through the resellers' 800 services, in violation of the Commission's rules. We accept the reasoning of the Commission and deny the petitions for review.

## I. BACKGROUND

The orders under review, *Teleconnect Co. v. Bell Tel. Co. of Pennsylvania*, 10 F.C.C.R. 1626 (1995), and *LongDistance/USA, Inc.*, et al., 10 F.C.C.R. 1634 (1995), concern the CCL charges that LECs assess against interexchange carriers (IXCs) in order to recover their costs for services and facilities used to originate and terminate interstate long-distance calls. Thus, for each interstate call an IXC typically pays a CCL charge to the LEC originating the call and another CCL charge to the LEC terminating the call.

Initially the LECs levied the same charge at the originating and terminating ends of each call. For reasons that need not concern us here, the FCC created a bifurcated CCL rate system that required the LECs to recover their costs through the assessment of a lower CCL charge for originating and a higher CCL charge for terminating an interstate longdistance call. Although the difference between the originating and terminating charges has diminished if not disappeared in the past few years, it was significant at the time the complaints in this case were filed.

A CCL charge is assessed only with respect to the "open end(s)" of a call, that is, at an end that uses the carrier common line plant of an LEC. *See* 47 C.F.R. § 69.105(b)(1)(ii). If an interstate long-distance call has two open ends, as do most, then the IXC that carries it is assessed the lower CCL charge by the LEC at the originating end and pays the higher CCL charge to the LEC at the terminating end. If a call has only one open end, as does the typical interstate call to an 800 number, then the IXC is assessed the higher CCL charge at the open end, *see* 47 C.F.R. § 69.105(b)(1)(iii), which in the case of 800 service is the originating end. An LEC may not collect a CCL charge both from the

facilities-based IXC (such as AT&T, MCI, or Sprint, hereinafter "AT&T" for the sake of convenience) that initially purchases use of the local exchange plant and from the so-called "resale" IXC, which purchases this service from AT&T and resells it to the public as part of a larger calling configuration. As the Commission has explained, "resellers should not have to make a 'double' contribution toward recovery of common line costs," *WATS–Related and Other Amendments of Part 69 of the Commission's Rules,* 59 Rad. Reg.2d 1419 (1986) (*"WATS Access Charge Order"*), i.e., once in the price at which they buy service for resale and then again in the CCL charge imposed by the LEC.

Under the Commission's rules an LEC may not assess the higher CCL charge at both ends of a single call no matter what the configuration of the call may be. *AT&T Communications Revisions to Tariff No. 2 (ReadyLine Service),* 2 F.C.C.R. 5939 ¶ 4 (Com.Car.Bur.1987) (*ReadyLine Clarification Order*). The last-cited order involved a new toll-free inward dialing service called "800 ReadyLine" that was developed by AT&T. As with regular 800 service, a caller using 800 ReadyLine service initiates a call by dialing an 800 number from an open end; instead of terminating at a closed end, however, the call is directed through the common or subscriber line of the called party, thereby terminating at an open end. Because this type of call has two open ends, the LECs had been assessing the higher CCL charge at both ends; the originating LEC charged the higher CCL charge because it perceived the ReadyLine call as a conventional 800 call, and the terminating LEC charged the higher CCL charge because it can tell only that the ReadyLine call terminates at an open end. In the *ReadyLine Clarification Order,* however, the Common Carrier Bureau determined that "it is unlawful for LECs to assess a terminating CCL charge at both the originating and terminating ends on a single call, including calls with two open ends," 2 F.C.C.R. 5939 ¶ 40; according to the Bureau, 47 C.F.R. § 69.207 is "clear on its face—all calls that have two open ends are to be assessed only one higher CCL charge on the terminating end and one lower CCL charge

on the originating end," *id.* at ¶ 31. The Bureau ordered the LECs to calculate and refund the overcharges to the affected IXCs, *id.* at ¶ 40, and the LECs did not petition the Commission for review of the Bureau's order.

The petitions for review currently before the court involve complaints brought before the Commission by the interexchange carriers Teleconnect Company and Long Distance/USA, Inc., which filed its complaint in conjunction with five other IXCs. The resellers allege that the LECs have been assessing them the higher CCL charge at both ends of the calls placed through their respective 800 services, in violation of the *Ready-Line Clarification Order.* Essentially, a call placed through the 800 services of the resellers is initiated from a common line open end and is routed by the originating LEC to an 800 number that the reseller purchased from AT&T. The call is then transferred from AT&T to the reseller through a second LEC, which terminates the call at the premises of the 800 subscriber, another open end. *Teleconnect,* 6 F.C.C.R. 5202 ¶ 6; *Long Distance/USA,* 7 F.C.C.R. 1634 ¶ 6. The LEC at the originating end of the call assesses AT&T the higher terminating CCL charge because the originating segment uses an 800 line; the LEC on the terminating end of the call directly assesses the reseller the higher CCL charge because the call terminates at an open end. *Teleconnect,* 6 F.C.C.R. 5202 ¶ 7; *Long Distance/USA,* 7 F.C.C.R. 1634 ¶ 8. Teleconnect and Long Distance/USA claim, however, that their calls are configured like an 800 ReadyLine call and that therefore a single call placed through their services should not be assessed two higher CCL charges. *Teleconnect,* 6 F.C.C.R. 5202 ¶ 9; *Long Distance/USA,* 7 F.C.C.R. 1634 ¶ 8.

The Bureau granted the resellers relief against the LECs. First, the Bureau held that a call made through the 800 service of one of the complainants is a single end-to-end call that has all of the relevant characteristics of a call made through AT&T's 800 Ready-Line service—namely, "two open ends and the use of an 800 line for the first leg of the call." *Teleconnect,* 6 F.C.C.R. 5202 ¶¶ 21–25; *Long Distance/USA,* 7 F.C.C.R. 1634 ¶¶ 15–19. Accordingly, the Bureau concluded that

under the *ReadyLine Clarification Order* a call made through a complainant's 800 service should not be assessed the higher CCL charge at both ends. *Teleconnect,* 6 F.C.C.R. 5202 ¶¶ 27–31; *Long Distance/USA,* 7 F.C.C.R. 1634 ¶¶ 21–24. The Bureau also explained that, although the complainants are resellers, they are entitled to relief under the Commission's *WATS Access Charge Order,* 59 Rad. Reg.2d 1419 (1986). *Teleconnect,* 6 F.C.C.R. 5202 ¶¶ 27–28; *Long Distance/USA,* 7 F.C.C.R. 1634 ¶¶ 21–22. The Bureau rejected the LECs' objection that the complainants do not actually pay the originating CCL charge; AT&T, or the other facilities-based IXC that provides the underlying 800 service at the beginning of the call, is assessed the higher CCL charge, but it "presumably" passes this charge along to the resellers in the price at which it sells to them. *Teleconnect,* 6 F.C.C.R. 5202 ¶ 28; *Long Distance/USA,* 7 F.C.C.R. 1634 ¶ 22. Because Long Distance/USA had reserved the issue of damages for resolution by a federal district court, the Bureau made no findings with respect to damages in its case. *See* 7 F.C.C.R. 408 at ¶ 25. In *Teleconnect,* however, the Bureau reached the issue of damages and concluded that the LECs had wrongfully overcharged the complainant by the difference between the higher CCL charge assessed at the originating end and the lower CCL charge that should have been assessed. 6 F.C.C.R. 5202 at ¶ 32. The Bureau then ordered the *Teleconnect* parties to negotiate an arrangement by which Teleconnect would be refunded this amount. *Id.*

The Commission denied the LECs' petitions for review of the Bureau's orders substantially for the reasons given by the Bureau. *Teleconnect,* 10 F.C.C.R. 1626 (1995); *Long Distance/USA,* 10 F.C.C.R. 1634 (1995). Most of the LECs then petitioned this court for review of the Commission's order; BellSouth and SNET, however, first petitioned the Commission to reconsider its decisions denying review of the Bureau's orders. The Chief of the Enforcement Division of the FCC dismissed those petitions as repetitious, pursuant to 47 C.F.R. § 1.106(b)(3), *see Tele-*

*connect,* 11 F.C.C.R. 1837 (1996); *Long Distance/USA,* 11 F.C.C.R. 1835 (1996), after which BellSouth and SNET joined the other LECs in petitioning the court for review of the Commission's orders.

## II. ANALYSIS

The petitioners challenge the Commission's orders on two grounds. First they argue that they should not be required to refund charges that "were lawfully assessed at the time they were charged" to AT&T and "became unlawful only after the resellers had purchased services from [AT&T]" and configured their resale services as they did. Second, the petitioners contend that the Commission improperly assumed that AT&T had passed on the higher CCL charge to the resellers and that AT&T had not already claimed a refund from the LECs for the overcharge. The Commission and the resellers, who have intervened in support of the Commission, respond not only by defending the Commission's orders on the merits but also by arguing that BellSouth's and SNET's petitions for review are untimely.*

### A. The Timeliness of the Petitions

As for the matter of timeliness, BellSouth and SNET contend that their time to petition this court for review of the Commission's orders was tolled while the Commission considered their petitions for reconsideration. The Commission and intervenors assert that a petition for reconsideration that the Commission denies as "repetitious" does not toll the time to petition for judicial review. All parties agree that if the pendency of BellSouth's and SNET's petitions for reconsideration did toll the time to petition for review of the underlying orders, then their petitions for judicial review were timely filed.

█ The general rule is that a petition for reconsideration filed with the Commission "will suspend the running of the period within which an appeal may be taken, and ... this period begins to run anew from the date on which final action is taken on the petition

---

* The United States, as a separate statutory respondent, does not join the argument that BellSouth's and SNET's petitions for judicial review are untimely.

or motion, whether it be granted or denied." *Los Angeles SMSA Ltd. Partnership v. FCC*, 70 F.3d 1358, 1359 (D.C.Cir.1995). We see no reason to carve out an exception to this rule for cases in which the Commission dismisses a petition for reconsideration on the ground that it is repetitious. The Commission does not claim to have been plagued by even one repetitious petition for reconsideration filed solely for the purpose of tolling the time for filing a petition for judicial review; nor is it likely to be, for when time is short it is no harder to file a petition for judicial review than it is to file a petition for administrative reconsideration. Moreover, a petitioner seeking reconsideration by the agency may not always be able to anticipate whether its request will be dismissed as repetitious; we presume that a party files a petition for reconsideration rather than going directly to court only when it thinks the petition has a chance of succeeding. If we adopted the Commission's position, however, then many a party might be discouraged from seeking reconsideration before the agency lest it lose the opportunity thereafter to seek judicial review. For all of these reasons we reject the suggestion that we dismiss as untimely BellSouth's and SNET's petitions for judicial review.

### B. The Merits

■ The petitioners argue that they cannot be required to refund the higher CCL charges they assessed against AT&T at the originating end of the complainants' calls because they assessed those charges in accordance with the Commission's rule that an 800 call be assessed the higher CCL charge at its (ordinarily lone) open end; the LECs point out, and no one disputes, that at the time an LEC assesses a CCL charge at the originating end of an 800 call made through the complainants' services the LEC cannot tell that the 800 segment is part of a calling sequence that will terminate at an open end.

This argument is entirely unpersuasive. As they conceded at oral argument, the petitioners do not challenge the Bureau's decision in the *ReadyLine Clarification Order* that a single call should be assessed only one higher CCL charge; nor have they sought

review of the Commissions' finding in this case that a call using one of the complainants' 800 services is but a single call for this purpose. In sum, the petitioners have effectively conceded that they were not entitled to charge the two higher CCL charges they have assessed with respect to calls made through the complainants' 800 services.

■ Accordingly, the only question before us on the merits is whether the complainants are entitled to receive a refund for the overcharges. The petitioners' first argument truly responsive to that question is that the complainants are not entitled to a refund because, as resellers, the complainants did not pay the higher CCL charge at the originating end; AT&T or the other facilities-based IXC from which the complainants purchased services for resale is the LECs' only direct customer, and it is the party that paid the disputed charge. The LECs contend that the Commission improperly presumed, without the benefit of record evidence, that AT&T "passed on" this charge to the complaining resellers. In addition, the petitioners argue that the Commission's reliance upon the "passing on" theory for recognizing the claims of the resellers is inconsistent with the Supreme Court's decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). These arguments are also without merit.

In *Illinois Brick* the Court held that an indirect purchaser could not bring an action for damages under § 4 of the Clayton Act against the original seller to recover the overcharges paid by the direct purchaser and allegedly passed on to the plaintiff. The Court based this decision on two grounds. First, it had already held in *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968), that, in an antitrust action brought by a direct purchaser, the defendant could not argue that the direct purchaser had no damages because it had passed on the illegal overcharge to its customer; therefore the Court was compelled to forbid an indirect purchaser from using the passing-on theory in an offensive manner to support its claim to have borne the burden of the illegal overcharge. *Illinois Brick*, 431 U.S. at 728, 97

S.Ct. at 2065. The Court explained that unless it applied the same rule to both plaintiffs and defendants there was a danger of "double recovery," i.e., by both the direct and the indirect purchasers. Second, the Court was concerned about the "evidentiary complexities and uncertainties" involved in determining the actual incidence of an overcharge that had been passed on at least in part to the indirect purchaser; protracted evidentiary proceedings could so burden plaintiffs as to undermine effective private enforcement of the antitrust laws. *Id.* at 731–33, 97 S.Ct. at 2067–68. In the Supreme Court's judgment "the antitrust laws will be more effectively enforced by concentrating the full recovery for the overcharge in the direct purchasers rather than allowing every plaintiff potentially affected by the overcharge to sue only for the amount it could show was absorbed by it." *Id.* at 735, 97 S.Ct. at 2069.

The reasons the Supreme Court gave in *Illinois Brick* for rejecting the passing on theory in antitrust cases are inapplicable here. First, there is no danger of double recovery in this setting. As the Commission made clear in its orders, the petitioners' direct customer (AT&T) may not recover the higher CCL charge it was lawfully assessed for its 800 segments. Second, whereas in *Illinois Brick* the Court was worried that protracted evidentiary proceedings necessitated by the passing on theory would undermine the deterrent effect of the antitrust laws, the opposite concern is more appropriate here; only the complainants are entitled to reimbursement for the amount they were overcharged, so that if they were not permitted to recover, then no one could, and the LECs would be able to keep the excess CCL charges. Nor is there merit to the petitioners' argument that the symmetry maintained by the Supreme Court in *Illinois Brick* now requires that the Commission, which previously forbade defensive use of the passing on theory, now forbid its offensive use. The earlier case to which the petitioners refer, *AT&T Communications v. Northwestern Bell Tel. Co.,* 8 F.C.C.R. 1014, 1020–21 (1993), *aff'd sub nom. MCI Telecommunica-*

*tions Corp. v. FCC,* 59 F.3d 1407 (D.C.Cir. 1995), is not controlling here. In that case the Commission rejected an LEC's argument that the amount it was required to refund to AT&T for charges billed in violation of its prescribed rate of return should be reduced because AT&T had passed on the excess charges to its customers. Permitting those AT&T customers to rely upon the passing on theory in a subsequent case seeking damages from that same LEC would indeed offend the symmetry required by the Court because there would be a danger of double recovery; in this case, as we have seen, that is not a possibility.

Finally, the petitioners argue that the Commission improperly refused to consider whether AT&T had already received credit from the LECs for the higher charge, so that recovery by the resellers would indeed be duplicative. The petitioners, however, presented no evidence, nor have they even alleged, that they have already reimbursed AT&T—a fact that, as they conceded at oral argument, they could readily determine from their own records. Under these circumstances the petitioners' final argument borders upon the frivolous.

### III. CONCLUSION

For the reasons stated above we hold that all the petitions for review are timely. In addition, we conclude that the Commission was correct in holding that the LECs' assessment of two higher CCL charges for a single call placed through the resellers' 800 services was in violation of the Commission's rules, as explicated in *ReadyLine Clarification Order.* Therefore, the petitions for review of the Commission's orders are

*Denied.*